Good morning, Your Honors. May it please the Court, Doug Wardlow for Appellant, Lindell Management, LLC. In this case, the arbitration panel's award should be vacated because the arbitrators exceeded their powers. It should be vacated under Section 10A.4 of the Federal Arbitration Act. And we can see that is true because there is no interpretive route from the contract to the award. The arbitrators in this case strayed from their delegated task of interpreting the contract and instead they issued an award, these are the words of the Supreme Court and Oxford Health Plans, issued an award that reflects their own notions of economic justice rather than drawing its essence from the contract. I would like to highlight four considerations that support this conclusion. First of all, the panel's award relies entirely on a contest rule that has no basis in the contract but rather is based on extra contractual statements. Secondly, the panel altered the contest fundamentally in a way that contradicts the contract's unambiguous terms, transforming the contest from a contest about the content of these data files that were issued into a contest about the form or the format of the data files. The panel thirdly disregarded the contract's unambiguous provisions, setting the burden of proof for the contest, and fourthly, the panel expressly stated that it imported its own notions of fairness and reasonableness, that is, its own notions of what a reasonable contest would look like into its award in order to render its award. So I'll start with the first consideration, that the arbitration panel's award is based entirely on the panel's invention of a contest rule that has no basis in the contract at all but rather, as the panel expressly stated, is based on extra contractual statements. So specifically, the panel determined that a participant could win the contest by merely showing that the data files presented by Lindell were not in a particular format, namely in PCAP or packet capture data format, regardless whether the data in the files actually related to the November 2020 election, which was the standard set by the unambiguous terms of the contract. I understand the substance of the argument, but arbitrators can interpret contracts. That's what they have to do. Yes, Your Honor. So where is it that they flunked that restriction on their authority? Well, absolutely. So arbitrators must interpret contracts, of course, and we must defer to their interpretations, but here they were not interpreting the contract at all because what they did was they went to extra contractual statements when they had already said that the terms of the contract were unambiguous. And that's a key thing because they determined the contract terms were unambiguous, then they went to extra contractual sources, and then on top of that, they altered the contest rules in a way that contradicts the terms that they said were unambiguous. In other words... Well, no, no, no, you're going awful fast. What case takes your approach to, they said it was unambiguous and then they looked to other sources to interpret? I would point to the intercity gas case. And in that case, the arbitrator stated the agreement there which involved the sale of natural gas and the rate for the sale of natural gas from a wholesale customer to another customer across the northern border. What court was that? What's that? What? Intercity gas versus Boise Cascade. And in that case, the arbitrator... I don't see it in your tables of authorities. Oh, is it? Let's see here. If you look in our opening brief, it is... No, I'm on page IV. Let's see. One second. All right. So on page IV, so 1, 2, 3, 4, 5, 6, the 6th case down. In that case, the arbitrator set a rate for the gas that was different from what the contract unambiguously stated that the rate should be because it said that the rate had to be based on the wholesale cost. The arbitrator said that the contract was unambiguous in that regard, but then the arbitrator set a different rate that wasn't based on the wholesale cost. And the court vacated the award for that reason because the arbitrator said that the contract was unambiguous, but then went ahead and ignored that and did something entirely different, contradicting the plain meaning of the terms of the party's agreement. And that's exactly what happened here. But what was the plain meaning of the party's agreement? In that case? In this case.  In this case. The plain meaning of the party's agreement was that fundamentally, the contest was about whether a contest participant had to prove that the data files at issue that were provided to the contestants by Lindell Management did not relate to or reflect data from the November 2020 election. What does that mean? That means that you need to compare the substance of the data files, analyze the substance of the data files and make sure that they don't... What kind of data files? I mean, what... So 11 data files were provided to the contestants and those 11 data files were in different formats and contained different things. And the job of the contestants was to open those files up, analyze them and make a showing, prove that the data files for the contract's terms did not contain information related to the November 2020 election. And that's the simple task of the contestants. Is there potentially a logical way for the arbitrator to have used the reasoning they did that is simply an application of logic and not a resort to external sources? Let me give you kind of an example. If the requirement is, in this bowl is oatmeal, you got to prove it's not. Well, if there's no wheat in the oatmeal, if there's no wheat in the bowl, it's not oatmeal. So why does that require you to go find other evidence if what you can do is show that what's in that bowl is not oatmeal because there's no wheat in it? Right. And it sounds to me like that's kind of the logic that was used here. Well, I think your example is very good, but that's not what the logic was that the panel used. So using the oatmeal and wheat example, yeah, you could say there's no wheat in the oatmeal, therefore it's not oatmeal, or it doesn't have this particular ingredient, therefore it's not oatmeal. Well, it sounds kind of like that's what they were saying, is that you don't have these, that if this was the kind of data that the contest is about, there'd be this CAP data, this PCAP data, but it's not there. And if it's not there, it's not what it purports to be. But in the example that you gave, you have to look at the oatmeal and determine whether there are oats or wheat in it, right? In this case, they didn't require the contestants to look at the content of the files at all. They just said, you know, it's not in this particular form or format. So that's like saying, oh, the oatmeal is not in a blue bowl, therefore it can't be oatmeal, right? But even Zeidman, the panel especially states in its reasoning that Zeidman testified at the arbitration hearing that election data could come in many different forms other than, or could come in forms other than PCAP or packet capture data. And yet, nonetheless, they changed the contest so that it was a contest all about the form or the format of the data, which says nothing about the content of the data. In fact, Zeidman didn't make any showing whatsoever about the content, the substantive content of the data, other than saying the data was not in this particular form. So you can't determine from the form or the format of the data what is in the data. And because the arbitration panel fundamentally changed the nature of the contest in that way, they imposed a new obligation on Lindell Management to pay out the prize money in the event that a contestant would just make this showing about the form or the format of the data, the container of the data. Counsel, would that be analogous to saying that because the oatmeal is not an individual serving pack, it's just not oatmeal? Exactly. Yes, that's exactly right. That's even better than the bowl example, Your Honor. Yes. And that obviously doesn't make any sense, right? Because the same thing here, if this computer file can be divided up and segmented and formatted in many different ways, as Zeidman testified and as the panel pointed out. So demonstrating something about its format doesn't say anything about what is in the actual file. And the contract is very clear that the contestants have to show that the data presented to them is not reflective of or related to information about the November 2020 election. And that's really where I think where the arbitrators went off on the wrong track. So not only did they do that, they changed the contest in that way, imposing a new obligation on Lindell Management to pay the prize money, but they also did that based on extra contractual sources, statements made by Mr. Lindell and other expert witnesses outside of the contract, prior to the contest, about what format people might expect data to be in. But their expectations... Well, if you're trying to decide whether something's unambiguous or not, sometimes you need some help. Very true, Your Honor. But here they said that there was an ambiguity. If you've got an oil and gas lease question and there's a mineral interest term that's prevalent in the Dakotas or wherever the venue is, that isn't used that way anywhere else, maybe you need some oil and gas experts to explain that. That would be the case. But when the arbitrator says that the terms are not ambiguous and then goes and does something different, I think that is where we draw the line. I don't know why they said that. I do actually, Your Honor, and here's why. And you can see that from the language that they used and then also from the agreement and from the contract of the parties. The agreement says that if there is an ambiguity, then it must be interpreted in a way that favors Lindell Management or it must be interpreted according to what Lindell Management says. And so in order to avoid that, I believe, the arbitrators said that the terms were not ambiguous. But then they went and interpreted those terms as if they were ambiguous and imported those extra contractual statements into the new standard they created, fundamentally changing the nature of the contest. In addition to that, they ignored the requirement that the proof be made unequivocally and to a 100% degree of certainty. They just completely disregarded that standard from the contract. And when an arbitrator disregards clear, unambiguous contractual language like that, it essentially modifies the contract. An arbitrator can't modify the contract. There must be a limit on what an arbitrator can do. Certainly, we give much deference to arbitrators and arbitration awards, but we don't want to send a signal that arbitrators can do whatever they want, that they can just ignore the contract entirely, that if they simply reference a few contract terms, then whatever they do is covered. That can't be the standard, right? That would actually undermine the utility of arbitration and discourage parties from engaging arbitrations in the future, undermine its utility for usefulness in terms of dispute resolution. So we certainly don't want to send that signal. And finally, I'd just like to note that the arbitrators expressly stated that they, at least in part, based the award on their own notions of what is reasonable and what is fair. They said that, you know, information in a general sense about the election couldn't possibly constitute information about the election for purposes of the agreement and the contest because that wouldn't be a reasonable contest. That's essentially what they said. But they don't get to sit there and import their ideas of fairness and reasonableness into the contract. So in all those ways, the arbitration award is tainted. And I ask respectfully that this Court would reverse the district court's decision and vacate the arbitration award. And I'll reserve the rest of my time for rebuttal. Thank you, Your Honors. Mr. Porter. Good morning, Your Honors. May it please the Court, Gregory Porter for L.E. Roberts-Zeidman. Mr. Lindell contracted for arbitration. Mr. Lindell does not complain that the arbitrators applied the wrong contract. Mr. Lindell does not complain that the arbitrators applied the wrong law. Mr. Lindell does not complain that the arbitrators focused improperly on the wrong terms. Rather, he complains that... Oh, of course he does. He's misinterpreted those terms. That's what he's saying. That is the essence of his argument. And when the essence of the argument... But the essence of the argument, counsel, was whether or not the arbitration panel exceeded its authority. Yes, but that is how the argument is dressed. But if you actually look at what he's complaining about and what the panel did, he's complaining about their interpretation of key terms. Let me reframe it then. The district court thought that the panel's assertion, whatever it was, that PCAP was the only data or venue data method that was required. It was the only data required. Now, why isn't that changing the essence of the contract? Because it's the essence of the contract that the panel created. Here's why you're on it. I'm putting it intentionally into standard A circuit precedent. Yes, you're on it. And here's why. The panel, the arbitration panel, was trying to determine what the key phrase data from the November 2020 election meant. And it was unambiguous. Well, but in order to inform their analysis, they're still interpreting. They're still interpreting, though. And regardless of what... No, no, no. But the end result, with the error that the district court recognized, that went way beyond the plain language of the statute, I think they changed the essential nature of their contract into the contract they wanted to interpret. Well, Your Honor, I respectfully disagree. Well, of course. But here's what they're trying to do. They're trying to interpret what this term means. This data about the November election, okay? So their interpretation was clearly erroneous. The district court thought that. Well, let me... And let your client off the hook. If I may follow through with my argument to explain why I think the court has it wrong. They're trying to interpret this phrase, is this data about the November 2020 election? And they... They didn't explain. They didn't even look at the data. But hold on. They said no because it didn't have this file. Right. And they concluded, based on the testimony... From the contract on that point. Well, no, that's not true, Your Honor. That's just not true. They concluded that, first, the threshold conclusion is, one, data about the November 2020 election can't be anything about the election. It can't be a fifth grader's essay about false electors or something like that. Has to pertain specifically to the November 20 election. Because if it doesn't do that... And where do you get that in the plain language of the contract? Because otherwise it yields an absurd result. That is a basic principle of contract interpretation. It's a fifth grader's essay. You know, it doesn't allow you to rewrite a contract as an arbitrator. But it does allow you to... It may mean that it wasn't a valid contract, but... It does allow you to give terms a reasonable meaning to avoid an absurdity. And that's what they did. And then second... What term did they give a reasonable meaning? The term about whether the data relates to the November 2020 election. Those are the... That was one of the key terms they interpreted. Counsel, do the words packet capture or PCAP appear anywhere in the contract? No, Your Honor. And yet the arbitration panel concluded that it was unambiguous. And it seems they went out and looked at extrinsic evidence. Isn't that contrary to our holding in Excel Corporation? No, no, I don't think so, Your Honor. First of all, the looking to extrinsic evidence, principally the testimony of Mr. Lindell and his data experts, is something one does as part of contract interpretation. So the fact that they look to his testimony and those of his expert was in aid of contract interpretation. Second... But you have to stay within the essence of the contract. Yes, but... And that's why this usually comes up in labor arbitration cases. Where an ALJ has gone completely off the pike. Yes, Your Honor. But if I could return to the... I can't. Why doesn't it apply to a business arbitration contract as well? It does. But unlike the case in... The inter-energy case, I think, is intercity energy case or intercity gas case that Your Honor referred to. In that case, the arbitrator went wholly outside the terms of the contract. It wasn't even trying to interpret the contract. It went to the course of negotiations and things of that nature. Here, the arbitrators are trying to interpret two key phrases of the contract. And those two key phrases are set out in Pelley's index at 24. The issues for decision. And on page 25, the two phrases are, prove that the data Lindell provides and represents reflects information from the November 20 election. That we just discussed that. And the panel conclude, the arbitration panel concluded that that phrase from the November 2020 election must mean data about the election itself. Not newspaper articles, not a fifth grader's essay. That is a reasonable interpretation because any other result would be absurd. How does the absence of PCAPP data establish that the information or the data was not from or related to the election? So the arbitrators concluded, based principally on the testimony of Mr. Lindell and his own data experts, that the only kind of data that could be reasonably come out of the November 2020 election was PCAPP data. And we can have an argument about whether that's extrinsic. Wait a minute, that was wrong based on other testimony. Didn't the panel acknowledge that data from elections could be in other formats? It did, it did. How could the panel possibly know whether or not data had been captured in perhaps PCAPP form and then converted to some other format? Well, no, no, that's not possible here. And the panel walks, that particular example is not possible because the panel actually walks through all the data sets provided to the contestants and explains how it could not be PCAPP data, full stop. It's just in the nature of the structure of the data that none of the data provided by Lindell to the contestants was PCAPP data. I mean, that's not really disputed. That doesn't matter. When they acknowledge that there are other data formats that can be substantively equivalent. Yes, but the panel concluded based on the testimony of Lindell's and his experts that the party's agreement required Lindell and his data experts to submit PCAPP data to the contestants. The contract doesn't say that. The contract doesn't say that, but there's extrinsic evidence and the question is not whether... Not the essence of the contract. But you're allowed to look at extrinsic evidence when interpreting the contract. If it's ambiguous, yes. Yes, so the best case scenario for Lindell... This is not ambiguous for reasons because they didn't want to do... Well, we don't know what their reasons were, but even if the panel committed legal error in considering extrinsic evidence, this court should still affirm... Not if they departed from the essence of the contract as a result of their legal error, period. I don't think they departed from the essence of the contract because the essence of the contract is informed by the contemporaneous extrinsic evidence. And if you can resort to extrinsic evidence to inform the terms of the contract, then you can't say that it's wrong for them... That they somehow changed the contract because the extrinsic evidence is absolutely in support of the conclusion that Mr. Lindell and his experts intended the data to be packet data. That's his testimony sworn at the hearing. And I thought the test people, I mean, said they were surprised by the nature of the data. They expected something different. And then we got that transmogrified into... It had to be PCAP data or it didn't comply with the contract. Well, Mr. Zeidman was surprised that the data did not... There was another chap too who was kind of in the lead of the witnesses who said, who was in the screening group. I can't remember the details. They were surprised it wasn't PCAP data because they've been told they were going to be getting PCAP data. Who told them? Mr. Lindell and at... And that it was going to be PCAP? Yes, that's what was told to the contestants. Give me a cite to the arbitration record. Okay. Page 27 of Apelli's index. As noted, Mr. Lindell and his cyber expert witnesses admitted that the data to be provided from the election was to be in the form of packet data. See, I want to read the testimony. Oh, the testimony. I don't know if that's part of the actual appendix, Your Honor. No, that's... I think... Then we don't have an adequate record to decide the appeal. Well, I guess it's a do-over. Well, I submit, Your Honor, you can decide this. You should decide in Mr. Zeidman's favor because they are interpreting... The arbitrators were interpreting the contract. And under this court's precedent, as long as the arbitrators are even arguably interpreting contract, the award must be affirmed. There are limits. There are limits. We're talking about the limits. We are talking about the limits. I have nothing further to add unless the panel... Court has any more questions. Thank you, Your Honor. Counsel, before you start your rebuttal, would you respond to the position taken that Lindell was going to supply PCAPP data, that that was represented to the contestants? Absolutely, Your Honor. There is no reference, excuse me, no evidence in the record that that is the case. And what the panel said about that, excuse me, is that Mr. Lindell testified, or not testified, but had made statements prior to the contest about PACA capture data, and that cyber experts said that they expected data to be in PACA capture format, and they were surprised when it wasn't, but that doesn't say anything about the intentions of the parties as expressed by the unambiguous terms of the contract with respect to what format the data was to be supplied in. The contract is completely silent on what form or format the data would be supplied in, and that's very significant because without any kind of reference to the format of the data, it's clear from the face of the contract and the terms that the parties agreed and the arbitrators found were unambiguous that the contest was about the substance of the files and not their form or format. This invention of this PCAPP rule that the data had to be in PCAPP format in order to be data from the election is just pulled out of thin air based on these extra contractual statements surrounding the contest. That's not just a serious legal error, it's more than that. Those are also statements attributable to the defendant? Those are statements. Mr. Lindell said that he... Either him or his expert. He said that he made statements about packet capture data in general with respect to the contest, but no one ever said that the data certainly would be supplied to the participants in packet capture format. It would seem the district court may have thought that. I recall reading, I assume this is from the district court's assessment these terms require the data not merely be about the election but must be from the election process itself. As admitted by Mr. Lindell, this would be packet capture data. Thus, if data is not PCAPP data, it is not from the election. Mr. Lindell never admitted that it would have to be packet capture data to be from the election. That's something that the panel came up with and I think it's pretty clear from their reasoning that that's the case. And I'd just like to point out that when the panel goes through the different files, they talk about three exceptionally large .bin files. And if you look at that analysis, which is Appellant's Appendix, pages 41 through 42, it's interesting because Zybin isn't able to decipher the content of the files at all. He isn't able to say anything about what's in the files, period. He can't even tell what they are. They're extremely large files made up of a bunch of ones and zeros. And yet still somehow the panel concludes that that can't represent election data, even though, as Your Honor pointed out, data can be converted from one format to another. Thank you, Your Honors. Thank you, Counsel. The case has been well briefed and argued and we'll take it under advisement.